## 65872. SWEATT et al. v. JARBOE.

DEEN, Presiding Judge.

The history of this case is a complicated one, rife with allegations of fraud, conspiracy, malfeasance, and devious speculations in precious metals practiced in exotic locales, all intertwined with substantive theorizing and procedural maneuvering in federal and state courts. In October 1980 appellants filed simultaneous actions in the Fulton Superior Court and the District Court for the Northern District of Georgia, the basis of both actions being the conduct of appellee Jarboe, together with that of his employer, the Clayton Brokerage Co. of St. Louis, Inc., relative to a commodities account appellants had opened at appellee Jarboe's urging. According to appellants, the reason for filing actions in both forums was their fear that a case then pending before the Fifth Circuit would deny the jurisdictional basis of the federal cause of action, and that by the time this determination was made, the statute of limitations on the related state claims might have run.

The action filed by appellants in the federal court contained two counts, the first alleging violations of the Commodity Exchange Act, as revised, 7 USC § 1 et seq. and 28 USC § 1337; and the second alleging conspiracy to defraud under 42 USC § 1985 and 28 USC § 1337. The state claim was in six counts: breach of contract, conspiracy to defraud, breach of fiduciary duty, breach of warranties and indemnifications, wilful fraud and deceit, and stubborn litigiousness. In support of these claims appellants recited Jarboe's incessant urgings that they invest in commodities, despite their repeated protestations that they knew nothing of the commodities market, had little money to invest, and were in no position to risk losing what they had; the repeated assurances of Jarboe, a close social friend, that the silver market was a "sure thing" and offered a "guaranteed" return; their capitulation to Jarboe's unrelenting importunings, to the extent of borrowing $25,000 from friends and relatives with which to open an account; the "churning" of their account for the purpose of generating commissions; the diversion of funds from their account by Jarboe and several associates into a speculative scheme involving silver futures in the Cayman Islands; Jarboe's evasiveness when the

"guaranteed" profits failed to materialize; and the refusal of Jarboe and Clayton to indemnify them for the losses which ultimately amounted to more than the $25,000 originally invested.

Shortly after the filing of appellants' companion actions, appellees moved that the superior court action be stayed pending a ruling on the action pending in the federal court. The trial judge entered an order acknowledging the pendency of the federal action but denying the motion on the basis that a ruling by either court, whichever were to rule first, would constitute *res judicata* and would therefore by operation of law act as a bar to the prosecution of the other suit. This order obviously assumed that the case would be decided on the merits in either court.

At about the same time the Court of Appeals for the Fifth Circuit ruled in Rivers v. Rosenthal & Co., 634 F2d 774 (1980) that no private right of action existed under the Commodity Exchange Act.[1] Defendants thereupon moved in the district court that the case there be dismissed for want of a federal cause of action on either count. The motions to dismiss were thus predicated solely on the federal court's lack of subject matter jurisdiction. The district court, on the basis of the Rivers decision, granted the motions to dismiss, but without expressly stating in its order that the dismissals were on jurisdictional grounds and therefore without prejudice. F. R. Civ. P., Rule 41 (b). The Sweatts, conceding that at that time they had no federal cause of action, did not appeal the order of the district court.

Shortly afterward, Jarboe filed in the superior court a motion to stay discovery on the ground that the Justice Department had informed him that he was a target of a grand jury investigation into alleged irregularities in the silver futures market. This motion was denied, and some months later appellees filed in the superior court motions for summary judgment, pleading *res judicata.* Appellants thereupon filed a motion in the district court pursuant to F. R. Civ. P., Rule 60, seeking relief from judgment and petitioning for clarification of the order granting the defendants' motion for dismissal. Two months later the superior court granted defendants' motions for summary judgment on the grounds set forth in their motions, i.e., *res judicata;* and within the requisite thirty days appellants filed a notice of appeal to this court. Two months after

---

[1] The court notes that the U. S. Supreme Court on May 3, 1982, decided to the converse of the Rivers holding a case embracing a similar factual situation. See Merrill Lynch, Pierce, Fenner & Smith v. Curran, 456 U. S. 353 (102 SC 1825, 72 LE2d 182) (1982). While we cannot say to what extent, if at all, this decision may affect appellants' right to refile their claim in the district court, it would have no effect on the posture of the case in the Georgia courts.

that, the district court granted appellants' Rule 60 motion, thereby clarifying its earlier order and establishing that the dismissal was without prejudice. Exactly two weeks later appellants filed in the superior court a motion for reconsideration, which was denied six days thereafter. Appellants subsequently voluntarily dismissed without prejudice their appeal against defendant Clayton Brokerage Co. Jarboe, the sole appellee remaining in the case, has filed no briefs or other documents in connection with this appeal.

Appellants' four enumerations of error concern the superior court's granting of summary judgment on *res judicata* grounds and the denial of their motion for reconsideration in the light of the district court's clarification of its order of dismissal. *Held:*

1. The court notes at the outset that appellants' filing of their notice of appeal in May 1982, subsequent to the award of summary judgment to appellees but prior to the district court's entering its order clarifying its order of dismissal, operated automatically as a supersedeas, thereby depriving the trial court of jurisdiction to supplement, amend, alter, or modify the judgment under appeal. OCGA § 5-6-46 (Code Ann. § 6-1002); *Simpson v. Simpson,* 233 Ga. 17 (209 SE2d 611) (1974); *Jackson v. Martin,* 225 Ga. 170 (167 SE2d 135) (1969); *Brown v. Wilson Chevrolet-Olds,* 150 Ga. App. 525 (258 SE2d 139) (1979). See also *Walker v. Walker,* 238 Ga. 273 (232 SE2d 554) (1977); *Cohran v. Carlin,* 160 Ga. App. 762 (288 SE2d 81) (1981). The trial court's subsequent action in entertaining and ruling on appellants' motion for reconsideration and to vacate was therefore a nullity. Consequently, appellants' fourth enumeration (the superior court's denial of their motion for reconsideration) is without merit.

2. The validity of all of appellants' remaining enumerations turns upon whether or not adjudication of their claims by the Superior Court of Fulton County was barred by *res judicata.* Thorough study of the record reveals that, despite the facial ambiguity of the District Court's order of dismissal entered in June 1981, the basis of that dismissal was procedural — i.e., jurisdictional — rather than a consideration of the merits. At the time the order was entered, the status of the law was that there existed no private cause of action under the Commodity Exchange Act, and Count I therefore stated no claim upon which the federal courts could grant relief. Moreover, as even appellants acknowledged, Count II stated no claim cognizable under the civil rights provisions embodied in 42 USC § 1985. It is axiomatic that where an action states no claim cognizable in the forum where the action is brought, that court has no jurisdiction beyond ruling that no jurisdiction exists, as was done in the case at bar. As the briefs in support of appellees' motion to dismiss make abundantly clear, want of jurisdiction was the basis for

the motions. The subsequent order granting appellants' Rule 60 motion confirms this.

In F. R. Civ. P., Rule 41 (b), lack of jurisdiction is expressly stated as an exception to the general rule regarding involuntary dismissal: that is, "a dismissal under this subdivision and any dismissal not provided for in this rule, *other than a dismissal for lack of jurisdiction,* for improper venue, or for failure to join a party under Rule 19 [regarding indispensable parties] operates as an adjudication upon the merits." (Emphasis supplied.) Since *res judicata* by definition cannot attach in such circumstances, it follows that no *res judicata* effect attached to the District Court's dismissal of appellants' action.

Appellee urges, however, that appellants' cause of action is nevertheless barred because appellants should have brought not only their federal claims but their state claims in their federal action, so as to invoke pendent jurisdiction and achieve the desirable goals of "judicial economy, convenience, and fairness." United Mine Workers v. Gibbs, 383 U. S. 715 at 726 (86 SC 1130, 16 LE2d 218) (1966). Appellee cites in support of his position a recent decision of this court, *Paine, Webber, Jackson & Curtis v. McNeal,* 161 Ga. App. 835 (288 SE2d 761) (1982), affirmed in part and reversed in part on other grounds, 249 Ga. 662 (293 SE2d 331) (1982), which involves simultaneous actions brought in state and federal courts under the Securities Exchange Act of 1934, 15 USC § 78J (b), and related Georgia statutes. *Paine, Webber* sets forth thoroughly and clearly the tests for determining when pendent jurisdiction arises, as well as the criteria for *res judicata.* The federal court has pendent jurisdiction "where, in addition to a federal claim, the plaintiff has against the same defendant a non-federal claim, and the two claims constitute a single cause of action," 161 Ga. App. at 837; and "[w]here the state claim could have been litigated in the federal court under that court's pendent jurisdiction, a subsequent action in the state court is barred." Id. at 838. " 'A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue, or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered, until such judgment shall be reversed or set aside.' " Id. at 836; OCGA § 9-12-40 (Code Ann. § 110-501).

Although *Paine, Webber's* analysis is persuasive, it is inapposite to the case at bar because in *Paine, Webber* there was an adjudication on the merits, and the superior court's award of summary judgment on the basis of *res judicata* was appropriate. Since we have held, supra, that in the instant case there was no adjudication of the federal claims on the merits, no basis for pendent jurisdiction existed.

Consequently, no *res judicata* effect was created as to any of appellants' claims.

Had the district court's original order of dismissal expressly stated that the basis of the dismissal was lack of federal jurisdiction, or, in the alternative, had that court's second order been entered prior to the superior court's ruling on appellees' motions for summary judgment, such would indisputably have been properly taken into account in the superior court's deliberations on the summary judgment motions.

The record submitted on appeal does not make it entirely clear as to whether the superior court knew, prior to its ruling on appellees' motion for summary judgment, that the basis of the district court's action in dismissing the complaint was lack of federal subject-matter jurisdiction, and that appellees' *res judicata* pleading might for that reason be invalid. However, the record does contain a copy of appellees' amended answers to the complaint filed by appellants in the Fulton Superior Court, to which are attached copies of appellees' briefs in support of their motions for dismissal of the complaint in the federal court. Although the amendment, which raises the *res judicata* defense for the first time, makes no reference, direct or indirect, to the basis of the dismissal in the federal court, the briefs allude to lack of federal subject-matter jurisdiction. Dismissal *with* prejudice is sought, however — an anomaly if not an outright impossibility under F. R. Civ. P., Rule 41 (b).

If we assume that these attachments were a part of the record before the Fulton Superior Court as well as of the record on appeal, then we must hold that the court below erred in proceeding to judgment without first ascertaining what was the basis for the dismissal in the federal court, and whether *res judicata* was properly raised. Compare *Nat. Heritage Corp. v. Mt. Olive Memorial Gardens,* 244 Ga. 240 (260 SE2d 1) (1979).

*Judgment reversed. Banke and Carley, JJ., concur.*

DECIDED JULY 1, 1983.

*Graydon W. Florence, Jr.,* for appellants.
*Joseph A. Carragher, Jr.,* for appellee.